Alicia **RAMIREZ**, Appellant,

v.

**OTIS ELEVATOR COMPANY**, Appellee.

No. 05–91–00589–CV.

Court of Appeals of Texas, Dallas.

Aug. 11, 1992.

Rehearing Denied Sept. 18, 1992.

Michael A. Robertson, Grand Prairie, for appellant.

Laurie Kratky Dore, Austin, Richard F. Werstein, Dallas, for appellee.

Before BAKER, CHAPMAN and WIGGINS, JJ.

## OPINION

BAKER, Justice.

Alicia Ramirez appeals from a take-nothing judgment the trial court rendered for Otis Elevator Company on the jury's verdict. Ramirez contends the trial court abused its discretion in failing: (1) to strike Otis's pleading as a discovery sanction; and (2) to grant a new trial because of the discovery of material evidence during the trial. Ramirez also claims the trial court erred by not granting her a new trial because the jury's zero answer to the damage question was against the great weight and preponderance of the evidence. We find these points without merit. We affirm the trial court's judgment.

## FACTUAL BACKGROUND

Alicia Ramirez was a waitress at the Loews Anatole Hotel. On June 27, 1986, Ramirez's supervisor told her to retrieve napkins from a cart inside a freight elevator. As Ramirez went into the elevator under the elevator's descending gate, the gate fell and struck her. She suffered back injuries.

In November 1986, Ramirez sued Otis, the company that manufactured and serviced the freight elevator. Ramirez alleged Otis defectively designed and manufactured the elevator. In June 1987, Ramirez sent Otis requests for production. She sought any documents about repair, inspection, or maintenance work performed on the elevator before and after the accident. Otis objected to the requests as irrelevant because Ramirez had not alleged negligent repair or maintenance.

Ramirez amended her pleadings to include claims of negligence and gross negligence. She alleged Otis defectively or negligently designed and manufactured the placement of the elevator's control panel. She alleged the gate's warning bell did not sound and a "safety shoe" did not reverse the gate automatically after it struck her. In response to Ramirez's discovery re-

quests, Otis produced documents known as "Callback, Rope and Repair Reports," which were Otis's permanent record of repair and maintenance work performed on elevators under maintenance contracts. Otis also produced an "Index of Orders," which concerned elevator work not covered by a maintenance contract.

### THE TRIAL

Trial began July 20, 1990. Four days into the trial, Ramirez learned during testimony of an Otis employee that Otis's repairmen wrote up "time tickets" and gave them to Otis. The trial court ordered Otis to produce and deliver the time tickets to Ramirez. Otis also produced complete "Otisline" callback records from part of 1986 to the time of trial. However, Otisline records for the twelve months before the accident were not available because an employee had accidentally deleted them from Otis's computer database.

Ramirez orally moved for sanctions against Otis. Otis, in response, urged the court to (1) let Ramirez bring the records in front of the jury, (2) let Ramirez have several days to review the records, or (3) declare a mistrial, giving Ramirez an opportunity to review the records. The intervenor, the insurance company that paid Ramirez's workers' compensation benefits, objected to declaring a mistrial. Ramirez also objected to a mistrial. Ramirez insisted the court strike Otis's pleadings, render a default judgment, and allow Ramirez to go to the jury on damages only. Ramirez also argued three days' time was not enough to analyze the records. The trial court stated it would hold the motion for sanctions under advisement. The court gave Ramirez from noon on Thursday until the following Monday to review the records.

On Monday, at a hearing on the motion for sanctions, Ramirez continued to insist the trial court strike Otis's pleadings and submit the case to the jury on damages only. Ramirez argued this was the only proper remedy because the evidence

showed Otis destroyed the preaccident Otisline records during the suit's pendency. Otis moved for a continuance to give Ramirez more time to review the records and the court more time to consider another issue.[1] The trial court denied Ramirez's motion to strike Otis's pleadings and Otis's motion for continuance. The trial court deferred further consideration of discovery sanctions until after the jury verdict. The trial court allowed Ramirez to argue to the jury that Otis had destroyed the Otisline documents. The trial court instructed the jury:

> A party is entitled to show that the opposing party has destroyed documents that would bear on a crucial issue in the case. Since the destruction of relevant evidence raises a presumption that the evidence would have been unfavorable to the spoliator or the one destroying the document. I will take judicial notice of that.

The jury returned a verdict for Otis. The jury found that no manufacturing defect existed in the elevator when it left Otis's control and that Otis was not negligent. The jury also found Ramirez sustained no monetary damages.

Ramirez moved for sanctions and for a new trial based on the alleged discovery abuses. Ramirez again urged the court to strike Otis's pleadings, render a default judgment on liability, and grant a new trial on damages. Ramirez alternatively asked the court to assess monetary sanctions, grant a new trial, or assess court costs against Otis. The court's final judgment assessed court costs against Otis but ordered Ramirez take nothing from Otis. Ramirez moved for new trial, alleging the court abused its discretion in failing to render appropriate sanctions.

### DID THE TRIAL COURT FAIL TO APPROPRIATELY SANCTION OTIS?

#### A. Ramirez's Contentions

In her first point of error, Ramirez contends the trial court abused its discretion

---

**1.** Otis had moved to quash Ramirez's request for financial information about Otis and had sug-

gested it would need a continuance to obtain the information.

because it did not strike Otis's pleadings as a discovery sanction for concealing and destroying evidence Ramirez sought during discovery. Ramirez contends she learned on the fourth day of the trial that Otis had concealed service tickets that described work performed by Otis employees on the elevator at the hotel. When ordered to do so by the court, Otis produced these records within hours. Ramirez claims her attorneys had to examine more than 43,000 pages of records to sift out those that were relevant. Ramirez argues there was no time or opportunity to have her expert review the documents.

Ramirez also learned that an employee in Otis's Connecticut office deleted Otis's computer database records for the time sheets on repairs for the elevator at the hotel from Otis's system.

Ramirez contends the destruction of these records deprived her of the opportunity to locate witnesses to corroborate her evidence that safety measures on the elevator had malfunctioned on previous occasions. Ramirez urged the trial court to strike Otis's pleadings and to submit the case to the jury on damages only. She argued this was the only proper remedy because the evidence showed Otis destroyed the preaccident records while the suit was pending. She complains the trial court abused its discretion by not striking Otis's pleadings.

### B. Otis's Response

Otis contends that it timely responded to court orders for discovery before trial. Otis contended at trial that the records it had not produced were time tickets rather than repair tickets. Otis claims it showed that these time tickets were intended as weekly payroll records. Otis asserted that the description of any work performed by employees was coincidental and duplicative of other records. When ordered by the trial court, Otis produced the time tickets for Ramirez during the trial. Otis notes the trial court allowed Ramirez from noon on Thursday until the following Monday to examine the records.

Otis claims it also showed that the deletion of the repair records data before the date of Ramirez's accident was inadvertent. Otis showed it was a premature tape erasure by clerical personnel in Connecticut. Otis maintained the clerk accidentally performed the deletion while following an automatic data retention policy. Otis argued the deletion was not connected with any of Ramirez's allegations in the suit. Otis argues that it was not dilatory in its discovery responses and that any of its actions were in good faith and inadvertent.

### C. Discovery Sanctions— Standard of Review

■ A trial court may impose sanctions on any party who abuses the discovery process. *Bodnow Corp. v. City of Hondo,* 721 S.W.2d 839, 840 (Tex.1986) (per curiam); *Hanley v. Hanley,* 813 S.W.2d 511, 516 (Tex.App.—Dallas 1991, no writ); TEX. R.CIV.P. 215.[2] The trial court's imposition of discovery sanctions are within that court's discretion. We set aside that decision only upon a showing of clear abuse of discretion. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990).

■ The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present a proper case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242–42 (Tex. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *City of Dallas v. Cox,* 793 S.W.2d 701, 706 (Tex.App.— Dallas 1990, no writ). Stated otherwise, we determine whether the trial court's act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984); *Tate v. Commodore County Mut. Ins. Co.,* 767 S.W.2d 219, 222 (Tex. App.—Dallas 1989, writ denied).

■ In determining discovery sanctions, a trial court may consider the entire record and all the offending party's conduct dur-

2. All references to rules are to the Texas Rules of Civil Procedure unless otherwise stated.

ing the litigation. *Larson v. H.E. Butt Grocery Co.*, 769 S.W.2d 694, 696 (Tex. App.—Corpus Christi 1989, writ denied). Because a trial court decided a matter within its discretionary authority in a way different from that in which an appellate court might rule under similar circumstances does not show that the trial court abused its discretion. *Southwestern Bell Tel. Co. v. Johnson*, 389 S.W.2d 645, 648 (Tex.1965); *Tate*, 767 S.W.2d at 222.

█ To support a reversal of the trial court's actions, the trial court's refusal to impose the requested sanctions must have been such a denial of an appellant's rights as was reasonably calculated to cause, and probably did cause, rendition of an improper judgment. See TEX.R.APP.P. 81(b)(1); *Bruner v. Exxon Co., USA*, 752 S.W.2d 679, 682 (Tex.App.—Dallas 1988, writ denied). To determine the trial judge's guiding rules and principles in imposing sanctions for discovery abuse, we look to the rules as well as decisions of appellate courts of this state and of the United States. *Downer*, 701 S.W.2d at 242.

### D. The Applicable Law

#### 1. The Guiding Rules and Principles

Rule 215 provides the trial court with the discretion to enter orders for failure to comply with discovery requests. The trial court may enter such orders as are just, including striking the offending party's pleadings, refusing to allow the offending party to support or oppose designated claims or defenses, prohibiting him from introducing designated matters into evidence, or charging all or any portion of the discovery expenses or taxable court costs against the offending party or the attorney advising him. *See* rule 215(2)(b)(2), (4), (5).

If the court finds a party is abusing the discovery process, the trial court may, after notice and hearing, impose any appropriate sanction authorized by subdivision 2(b) of the rule. A trial court's sanction is subject to appellate review. *See* rule 215(2)(b).

#### 2. The Purpose of Discovery Sanctions

█ A trial court abuses its discretion if the sanction it imposes does not further one of the discovery sanctions' purposes. The purposes of discovery sanctions are to: (1) secure the parties' compliance with discovery rules; (2) deter other litigants from violating the discovery rules; and (3) punish parties who violate the discovery rules. *See Bodnow Corp.*, 721 S.W.2d at 840. Rule 215 authorizes sanctions that prevent or inhibit a party's presentation of the merits of its claims. These sanctions include excluding essential evidence, striking the pleadings, dismissal, and default. *See* rule 215, 2(b)(3), (4), (5). The effect of these sanctions is to adjudicate claims or defenses—not on their merits—but on how a party or his attorney conducts discovery. *See Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991).

However, the trial court must reserve such sanctions for circumstances in which a party has so abused the procedural rules that, despite imposition of lesser sanctions, the court can presume the party's position lacks merit and it would be unjust to permit the party to present the substance of that position to the court. *See Braden*, 811 S.W.2d at 929; *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 918 (Tex.1991).

#### 3. The Principle

█ The choice of sanctions is a matter for the trial court's sound discretion. Whatever sanctions the trial court imposes must be just under the circumstances. *See TransAmerican*, 811 S.W.2d at 917. Circumstances of the case include the reasons offered and proof by the offending party or established as a matter of law on the record. *Koslow's*, 796 S.W.2d at 704.

█ We measure whether the trial court's imposition of sanctions is just by two standards:

1. A direct relationship must exist between the offensive conduct and the sanction imposed.

 a. This means the court must direct the sanction against the abuse and to-

ward remedying the prejudice caused the innocent party.

 b. The sanction should be visited upon the offender. The court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.

 2. Just sanctions must not be excessive.

 a. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes.

 b. Courts must consider the availability of less stringent sanctions and whether those lesser sanctions would fully promote compliance.

See *TransAmerican*, 811 S.W.2d at 917. These standards set the bounds of permissible sanctions under rule 215 within which the trial court is to exercise sound discretion. See *TransAmerican*, 811 S.W.2d at 917.

 These standards and constitutional due process limit the trial court's ability to impose very severe sanctions. *TransAmerican*, 811 S.W.2d at 917. In assessing sanctions, the trial court must guide its discretion by a reasoned analysis of the purposes sanctions serve and the means of accomplishing these purposes. *TransAmerican*, 811 S.W.2d at 917 n. 6. The Texas Supreme Court does not specify guidelines for the trial court to follow in determining whether to assess sanctions. This Court has articulated six factors to guide us in reviewing whether the trial court abused its discretion in imposing "death penalty" sanctions.[3] See *Hanley*, 813 S.W.2d at 517 (relying on *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3rd Cir.1984)).

 We consider: (1) the extent of the parties' personal responsibility; (2) the prejudice to the opposing party caused by the offending party's failure to respond; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than striking the pleadings, which entails an analysis of alternative sanctions; and (6) the meritoriousness of a party's claim or defense. See *Hanley*, 813 S.W.2d at 518. We weigh these factors to assure that the trial court reserves the death penalty sanction for the instances in which it is justly merited. We should resolve doubts in favor of reaching a decision on the merits. *Hanley*, 813 S.W.2d at 518. We conclude these criteria apply, whether the issue is the trial court's imposition of or failure to impose such sanctions.

*E. Application of the Law to the Facts*

 Although it took slightly more than four years from the time Ramirez filed her original petition to the time of trial, the record does not show this delay was because of dilatoriness on the part of Otis in resisting discovery. This case is not one where a party never answered discovery requests. Otis objected to Ramirez's discovery requests and, when ordered to do so, timely responded to discovery. The record does not indicate an intent to delay discovery or a history of dilatoriness on Otis's part.

 During trial, upon discovery of the additional records, Otis promptly produced them in response to the trial court's order. Also, the evidence showed that the destruction of data from the Otisline database was inadvertent, and no evidence showed that incident was willful or made in bad faith.

 After Ramirez reviewed the records Otis produced, she renewed her motion for sanctions against Otis. Ramirez continued to insist the trial court strike Otis's pleading and submit the case to the jury on damages only. The record reflects that Otis offered to agree to a continuance to permit Ramirez more time to review the records. Otis also offered to agree to a mistrial. Both Ramirez and the workers' compensation carrier intervenor refused to accept the offer of a mistrial. Ramirez continued to urge the death penalty sanction.

---

**3.** Death penalty sanctions is the term given to the trial court's option to strike an offending party's pleadings, dismissing with or without prejudice the party's action, or rendering a default judgment against the disobedient party as provided under rule 215(2)(b)(5).

In her brief, Ramirez contends the circumstances of Otis's actions prejudiced her claims. However, following oral argument in a letter to this Court, Ramirez conceded a continuance would have cured any prejudice to her because of Otis's late production of the documents in question. Ramirez refused the offer of a continuance or mistrial and insisted on sanctions and continuing with the trial.

The trial court denied Ramirez's request for death penalty sanctions. However, the trial court submitted a jury instruction that Otis's destruction of the documents raised a presumption that the evidence would have been unfavorable to Otis. The trial court also permitted Ramirez to argue to the jury that Otis destroyed the documents. Finally, in response to a later motion for sanctions and for new trial, the trial court assessed court costs against Otis. The jury returned a verdict for Otis. The jury found no manufacturing defect existed in the elevator when it left Otis's control. The jury also found Otis was not negligent and that Ramirez sustained no monetary damages.

When we apply the *TransAmerican* and *Hanley* factors to these facts, we cannot conclude the trial court abused its discretion in denying Ramirez's motion for death penalty sanctions against Otis. We overrule Ramirez's first point of error.

## NEW TRIAL FOR EVIDENCE DISCOVERED DURING THE TRIAL?

In her second point of error, Ramirez contends the trial court abused its discretion by not granting her motion for new trial. After the jury verdict, but before the trial court rendered judgment, Ramirez moved for sanctions and for new trial. Ramirez based her motion for new trial upon Otis's failure to produce the Otisline records and the service tickets. Ramirez also complained of Otis's destruction of data from the Otisline computer database records. Ramirez again raised her complaint that she had only three days to examine 43,000 pages of records that Otis produced during trial. Ramirez reiterated her request for the trial court to strike all of Otis's pleadings. She also requested the entry of a default judgment and a new trial on damages.

### A. Ramirez's Contentions

In this point of error, Ramirez notes Texas courts recognize that newly discovered evidence is the basis for granting a new trial. *See* rule 324(b)(1); *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983). Ramirez recognizes that no Texas case has ever considered the question of whether evidence discovered during the trial of the case is subject to the rules relating to newly discovered evidence after the trial is complete. Ramirez posits that the question in this case is whether we should treat evidence discovered during trial the same as newly discovered evidence. We conclude, under the facts of this case, we should not do so.

### B. Standard of Review on Denial of Motion for New Trial

 The grant or denial of a motion for new trial is a matter for the trial court's discretion. *Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex.1984). We apply the abuse of discretion standard when the motion for new trial raises newly discovered evidence. *See Jackson*, 660 S.W.2d at 809–10. We must afford the judgment every reasonable presumption. We do not disturb the trial court's refusal to grant a new trial absent a manifest abuse of judicial discretion. *Van Winkle*, 660 S.W.2d at 809.

 To obtain a new trial on newly discovered evidence, the complaining party must show: (1) the evidence came to his knowledge after the trial; (2) it was not owing to his want of diligence that he did not know about the new evidence sooner; (3) the evidence is not cumulative; and (4) the evidence is so material it probably would produce a different result if the court granted a new trial. *See Sifuentes v. Texas Employer's Ins. Ass'n*, 754 S.W.2d 784, 787 (Tex.App.—Dallas 1988, no writ).

### C. Application of the Law to the Facts

 Ramirez cannot meet the first criterion for a new trial on newly discovered evidence. That is, the evidence came to her knowledge during the trial. We decline to extend the newly discovered evidence doctrine to evidence discovered during the progress of the trial.

Furthermore, and more compelling, during trial Otis offered Ramirez a continuance to review the records or a mistrial for additional time to review the records and to prepare further for trial. Ramirez rejected both offers. She continued to urge the trial court to impose the death penalty sanctions on Otis.

We conclude, under the facts of this case, the trial court's denial of a new trial was not an abuse of the court's discretion. *Van Winkle*, 660 S.W.2d at 809. We overrule Ramirez's second point of error.

### WAS THE JURY'S ZERO ANSWER TO THE DAMAGE ISSUE MANIFESTLY UNJUST?

In her third point of error, Ramirez complains the trial court erred by failing to grant her motion for new trial.

### A. Ramirez's Contentions

 Ramirez contends the jury's answer to the damage question was against the great weight and preponderance of the evidence and was manifestly unjust. She argues the jury's zero answer to each element of the damage question ignores the undisputed evidence and was improper. *See Allen v. Compton*, 461 S.W.2d 143, 145 (Tex.Civ.App.—Dallas 1970, no writ). Ramirez acknowledges that the jury answered the liability issues against her but contends Otis's discovery abuses poisoned the trial.

### B. Application of the Law to the Facts

Without a liability finding, the question of damages becomes immaterial. The jury's finding of no damages is harmless under such circumstances. *See Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334, 335 (1939); *Hancock v. City of San Antonio*, 800 S.W.2d 881, 885 (Tex.App.—San Antonio 1990, no writ).

The trial court did not abuse its discretion in denying Ramirez's motion for new trial. We overrule Ramirez's third point of error.

We affirm the trial court's judgment.