Lorie and Terry **BREWER**, Individually and as Next Friend for Shane Michael Brewer, a Minor, Appellants,

v.

Robert W. **DOWLING**, M.D., Womens Clinic West, P.A., and Harris Hospital–Methodist, Inc., Appellees.

No. 2–92–068–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 31, 1993.

Rehearing Overruled Oct. 26, 1993.

Darrell L. Keith, Law Firm of Darrell L. Keith P.C., Elizabeth Sturdivant Kerr, Kerr & Kerr, P.C., Fort Worth, for appellants.

Richard L. Griffith, Evelyn R. Leopold, Veronika Willard, Cantey & Hanger, L.L.P., H. Dustin Fillmore, K. Marvin Adams, The Fillmore Law Firm, Fort Worth, for appellees.

Before LATTIMORE, DAY and CLYDE R. ASHWORTH (Retired) (Sitting by Assignment), JJ.

## OPINION

DAY, Justice.

This appeal is from a take-nothing judgment rendered after a jury trial in appellants' medical malpractice suit.

We affirm.

The basis for appellants' suit is brain damage suffered at birth by their son Shane Brewer. Lorie Brewer was checked into Harris Hospital by Dr. Robert W. Dowling for premature delivery of her child. About five hours after her admission an electronic fetal monitor was attached to her. Such monitor produces a written record of the mother's uterine contractions and the fetal heart beat. About five hours later Dr. Dowling attached an internal fetal scalp monitor to Shane's head. This device also records the fetal heart beat but is more accurate than the external electronic fetal monitor. Both methods produce a permanent written record of the mother's uterine contractions and the fetal heart beat, and registrations from both monitors appear on a single strip. At 4:03 a.m. on June 15, 1982, six hours after attaching the internal fetal scalp monitor, Dr. Dowling delivered Shane by cesarean section. Shane had suffered brain damage due to a lack of oxygen.

Shane was taken to the hospital nursery on the morning of June 15th, and Nurse Rochelle Jee took the fetal monitor strip to the nursery. Dr. Dowling reviewed the strip that morning with Dr. Thomas E. Howard, an obstetrician-perinatologist, and with Dr. Frederick Carrington, Dr. Dowling's partner. Dr. Dowling also asked Dr. Pelham Staples to review the strip that morning, but it could

not be found. Dr. Carrington was the last one to see the strip, and he placed it in a box in the nursery.

Dr. Dowling and Dr. Carrington testified as to their recollections of what was shown on the strip. Nurse Jee testified that she made notes of what the strip showed and that it showed no decelerations to her knowledge. In summary, all appellees' witnesses testified that the missing strip showed nothing that would alert them to a problem of Shane experiencing oxygen deprivation.

In their sole point of error, appellants complain the trial court improperly refused to instruct the jury that appellees' destruction or loss of the fetal monitor strip created a rebuttable presumption that the information on the strip would have been unfavorable to appellees.[1] Appellants contend they were entitled to an instruction on this presumption: (1) because every medical expert witness testified that the missing evidence would have been the best evidence of what happened to Lorie and Shane Brewer; and

(2) because the missing evidence was critical to a determination of appellees' negligence.

■■■ A trial court has great discretion in submitting instructions and definitions to the jury. *Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). The court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict. Tex.R.Civ.P. 277. A "proper" instruction is one that assists the jury and is legally correct. *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988).

■■■ Any error in failing to instruct is reversible only if it caused or probably caused the rendition of an improper verdict. Tex.R.App.P. 81(b)(1); *Moody v. EMC Services, Inc.*, 828 S.W.2d 237, 245 (Tex.App.— Houston [14th Dist.] 1992, writ denied). Thus, the question on appeal is whether the requested spoliation[2] instruction was reason-

1. Appellants submitted twenty instructions on the presumption that the missing fetal monitor strip contained evidence unfavorable to appellees. Examples of these instructions are:

REQUESTED INSTRUCTION NO. 11:
You are instructed that if you find that one or more Defendants, or their agents or employees intentionally misplaced, discarded or destroyed fetal heart monitor strips, or other evidence, relating to Shane or Lorie Brewer, or otherwise intentionally caused fetal heart monitor strips, or other evidence, to be misplaced, discarded or destroyed, then you must presume that the missing evidence would have been unfavorable to that Defendant or Defendants, if any, whom you have found to have misplaced, discarded, destroyed, or otherwise caused evidence to be missing.
You are further instructed that such presumption may be rebutted by a Defendant.
 . . . .
REQUESTED INSTRUCTION NO. 14:
You are instructed that where evidence, such as fetal heart monitor strips, was peculiarly within the control of a Defendant and the Defendant fails to produce that evidence, you must presume that the missing evidence, if offered, would have been unfavorable to the Defendant.
 . . . .
REQUESTED INSTRUCTION NO. 16:
You are instructed that if the Plaintiffs have established by a preponderance of the evidence that Robert W. Dowling, M.D., Womens Clinic West, P.A. or their agents or employees intentionally misplaced, discarded or destroyed the

fetal monitor strips, or other evidence, or otherwise intentionally caused the fetal heart monitor strips, or other evidence, relating to Lorie and Shane Brewer to be misplaced, discarded or destroyed, then there is a presumption that Robert W. Dowling, M.D. was negligent which proximately caused the occurrence in question, and he must prove by a preponderance of the evidence that he was not negligent and did not proximately cause the occurrence in question.
 . . . .
REQUESTED INSTRUCTION NO. 22:
In answering this question, you are instructed that if you find that one or more Defendants, or their agents or employees, intentionally or negligently misplaced, discarded or destroyed fetal heart monitor strips, or other evidence, relating to Shane or Lorie Brewer, or otherwise caused fetal heart monitor strips, or other evidence, to be misplaced, discarded or destroyed, then you must presume that the missing evidence would have been unfavorable to that Defendant or Defendants, if any, whom you have found to have misplaced, discarded, destroyed, or otherwise caused evidence to be missing.
You are further instructed that such presumption may be rebutted by a Defendant.

2. Spoliation is defined as: "[t]he destruction of evidence. . . . The destruction, or the significant and meaningful alteration of a document or instrument." Black's Law Dictionary 1257 (5th ed. 1979).

ably necessary to enable the jury to render a proper verdict. *Id.*

We conclude that the trial court did not abuse its discretion in this case. The instruction was not necessary in order for the jury to render a proper verdict because the presumption appellants assert never arose. In addition, Texas case law does not mandate use of a jury instruction like the one appellants requested.

Two general rules apply to presumptions that arise from the nonproduction of evidence.

 The first rule is, failure to produce evidence within a party's control raises the presumption that if produced it would operate against him, and every intendment will be in favor of the opposite party. *H.E. Butt Grocery Co. v. Bruner*, 530 S.W.2d 340, 343 (Tex.Civ.App.—Waco 1975, writ dism'd). Importantly, this rule comes into play only when one party has introduced evidence harmful to its opponent. *See, e.g., State v. Gray*, 141 Tex. 604, 175 S.W.2d 224, 226 (1943); *Edwards v. Shell Oil Co.*, 611 S.W.2d 904, 907 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.); *H.E. Butt Grocery Co.*, 530 S.W.2d at 343; *City of Galveston v. State*, 518 S.W.2d 413, 417 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Fain v. Beaver*, 478 S.W.2d 816, 820 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.); *Lindsey v. State*, 194 S.W.2d 413, 417 (Tex.Civ.App.—Eastland 1946, writ ref'd n.r.e.). Under such circumstances, the failure of the opposing party to rebut the harmful evidence with evidence within its control *raises a presumption* that the unpresented evidence would also be unfavorable to the nonproducing party. *H.E. Butt Grocery Co.*, 530 S.W.2d at 344.

The Texas Supreme Court has put it another way: where a party is in possession of evidence *and does not testify*, the trial judge is authorized to take the failure to testify into consideration "not only as strengthening the probative force of the testimony offered to establish the issue, but [also] as of itself clothed with some probative force." *Gray*, 175 S.W.2d at 226.

All of the cases we have examined that apply this rule involved trial situations in which the party opposing the harmful evidence presented *no evidence at all* to rebut it. *See Gray*, 175 S.W.2d at 226; *Edwards*, 611 S.W.2d at 907; *H.E. Butt Grocery Co.*, 530 S.W.2d at 344; *City of Galveston*, 518 S.W.2d at 417; *Fain*, 478 S.W.2d at 820; *Lindsey*, 194 S.W.2d at 417. In each of these cases, the individuals with knowledge sufficient to rebut the harmful evidence did not testify at trial. *Id.*

 Applying this rule to the case before us, we find no presumption arose that the information on the fetal monitor strip was unfavorable to appellees. Appellants' expert testified at trial that, in light of all the other indications of fetal distress that had occurred just prior to Shane Brewer's delivery, it was highly likely that the heart monitor strip would have shown fetal distress. Appellees put on evidence to the contrary, however. Although they did not produce the fetal monitor strip itself, they introduced other evidence of the information contained therein. For example, Dr. Dowling, Dr. Carrington, and Nurse Jee testified from their own personal knowledge and from notations previously made in the Brewers' hospital charts concerning the information on the strip. According to appellees' testimony, the information on the fetal monitor strip was not unfavorable to them. Additionally, this testimony was corroborated by hospital chart notations made by Nurse Jee contemporaneously with the readout of the fetal monitors. These notations were made prior to Shane's birth and thus before appellees knew of the infant's severe problems. In contrast to the cases discussed above, then, this was not a situation where no evidence was presented to rebut an opponent's harmful evidence.

 The second rule is that the intentional spoliation of evidence relevant to a case raises a presumption that the evidence would have been unfavorable to the cause of the spoliator. *H.E. Butt Grocery Co.*, 530 S.W.2d at 344. There is no evidence that appellees or any of their agents or employees intentionally destroyed the fetal monitor strip. Neither is there evidence that appellees, their agents, or employees accidentally destroyed the strip. The record shows only that the strip is missing.

Texas law recognizes the right to have a jury make certain inferences in a situation where a hospital *destroys* evidence, *see H.E. Butt Grocery Co.*, 530 S.W.2d at 344,[3] but it does not recognize this right where evidence is merely *lost.* Appellants were entitled to show appellees destroyed the fetal monitor strip, *Fuller v. Preston State Bank,* 667 S.W.2d 214, 220 (Tex.App.— Dallas 1983, writ ref'd n.r.e.), but they did not do so. We will not infer spoliation or destruction of the strip—intentional or otherwise—from the mere fact that it is missing. Thus appellants are not entitled to a spoliation instruction based on the second rule.

We also note that none of the cases discussed up to this point address a party's entitlement to an *instruction* that failure to produce evidence raises a presumption that the unproduced evidence is unfavorable to the nonproducing party. Rather, all of these cases address the sufficiency of the evidence to support the findings of the trier of fact. *See Gray,* 175 S.W.2d at 226; *Edwards,* 611 S.W.2d at 907; *H.E. Butt Grocery Co.,* 530 S.W.2d at 342; *City of Galveston,* 518 S.W.2d at 417; *Fain,* 478 S.W.2d at 820; *Lindsey,* 194 S.W.2d at 417. Appellants are not claiming the evidence is insufficient to support the jury's verdict. Instead, they claim entitlement to the requested instruction because the most reliable and best evidence [4] of the information on the fetal monitor strip—the

strip itself—is missing. Nothing in Texas case law supports this contention.

The only appellate court to consider the issue before this court ruled against the proponent of the instruction. In *Thomas v. St. Joseph Hospital,* 618 S.W.2d 791 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) the Houston Court of Appeals found that the trial court did not abuse its discretion in failing to submit a jury instruction substantively similar to the one requested in the instant case. *Id.* at 798. Moreover, although the trial court in *Ramirez v. Otis Elevator Co.,* 837 S.W.2d 405, 408 (Tex. App.—Dallas 1992, writ denied) submitted such an instruction to the jury, the Dallas Court of Appeals did not comment on the propriety of or necessity for the instruction. *Id.* at 412.

Because this case presents neither of the two possible situations in which a presumption of unfavorable evidence could arise against appellees and because there is no case law mandating the instruction appellants requested,[5] we find the trial court did not abuse its discretion by refusing to instruct the jury as appellants urge.

We overrule appellants' point of error.

The trial court's judgment is affirmed.

CLYDE R. ASHWORTH, J. (Retired) (Sitting by Assignment) dissents.

---

3. We express no opinion about whether this presumption arises in the absence of intentional destruction of evidence.

4. Notably, appellants do not argue the fetal monitor strip is the only evidence of the information contained therein.

5. Appellants cite numerous out-of-state and federal cases that permit the presumption they claim exists and require an instruction thereon to be included in the jury charge. *See Carr v. St. Paul Fire & Marine Ins. Co.,* 384 F.Supp. 821, 831 (W.D.Ark.1974); *DeLaughter v. Lawrence County Hosp.,* 601 So.2d 818, 821–22 (Miss. 1992); *Public Health Trust of Dade County v. Valcin,* 507 So.2d 596, 600 (Fla.1987); *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737, 740 (1957); *Miller v. Montgomery County,* 64 Md. App. 202, 494 A.2d 761, 768 (1985). *See also* EDWARD J. DEVITT ET AL., 3 FEDERAL JURY PRACTICE AND INSTRUCTIONS § 72.16 (4th ed. 1987). As we have previously noted, however, Texas requires no such instruction under the circumstances pre-

sented here because the presumption of unfavorable evidence was not raised.

We expressly refrain from deciding whether such an instruction would be necessary or proper if a presumption of unfavorable evidence had been raised.

In their efforts to persuade us that a jury instruction on spoliation and/or the presumption of unfavorable evidence should have been given, appellants also call our attention to several states that permit a separate and distinct cause of action against a party who intentionally or negligently spoliates evidence that is within its exclusive control. *See Hazen v. Municipality of Anchorage,* 718 P.2d 456, 463 (Alaska 1986); *Velasco v. Commercial Bldg. Maint. Co.,* 169 Cal. App.3d 874, 215 Cal.Rptr. 504, 506 (Cal.Ct.App. 1985); *Smith v. Superior Court for the County of Los Angeles,* 151 Cal.App.3d 491, 198 Cal.Rptr. 829, 832 (Cal.Ct.App.1984); *Bondu v. Gurvich,* 473 So.2d 1307, 1313 (Fla.Dist.Ct.App.1984). Texas does not recognize spoliation of evidence as an independent tort.

CLYDE R. ASHWORTH, Justice (Retired), dissenting.

I respectfully dissent.

The majority states the instruction was not necessary because the presumption asserted by appellants never arose. In making such statement, the majority places itself in the role of a fact finder, judging the credibility of witnesses rather than that of an appellate tribunal. The majority would impose on appellants the impossible burden of showing an intentional destruction or loss of the records—such a burden could rarely be met and to make it a requirement avoids the realities of life.

Dr. Dowling and Dr. Carrington testified as to their recollections of what the monitor strip contained. Nurse Jee testified as to what the strip contained and that such contents were reproduced in her records. Appellants were deprived of a basic element of due process—the right to effectively cross-examine such witnesses as to the contents of the strip—appellants had no way to test the recollections or interpretations of such witnesses. It is noted that when Shane's problems became evident, the doctors involved, Dr. Dowling and Dr. Carrington, went to the monitor strip and not Nurse Jee's notes. Also, Dr. Staples sought to examine the strip at the request of Dr. Dowling only to find it missing within hours of Shane's birth. It is true that appellants' attorney was extended the right to argue that a presumption existed by virtue of such disappearance, but such right is hollow without a proper instruction from the court to the jury that they may infer that the missing strip contained information adverse to the interests of the defendants. The court has instructed the jury that they are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law they must be governed by the instructions in the charge. The jury finds no instructions with regard to the missing records—they then can assume that no law attaches to the fact that essential records are missing.

Submission of an instruction that a presumption exists by virtue of missing records was inferentially approved in *Ramirez v. Otis Elevator Co.*, 837 S.W.2d 405, 412 (Tex. App.—Dallas 1992, writ denied). *Ramirez* sued for personal injuries resulting from being struck by an elevator door. During trial it was discovered that some repair records had been destroyed. The trial court submitted an instruction that the destruction of such documents raised a presumption that the evidence would have been unfavorable to Otis. The court of appeals in reviewing the question of proper sanctions for such distinction tacitly approved the instructions by giving it as a reason for denying death penalty sanctions.

Appellants refer us to the case of *DeLaughter v. Lawrence County Hosp.*, 601 So.2d 818 (Miss.1992). In *DeLaughter* the hospital records of a decedent were "locked up" with instructions that they should not be examined by the family of the decedent. When such records were to be made available to the decedent's family, the records could not be found. In the trial of the case appellants sought three jury instructions with regard to a presumption arising from disappearance of the records. These instructions were denied, and on appeal such refusals were held to be proper because they created an impermissible, irrebuttable presumption of negligence, permitted an inference that negligent treatment was contained in the missing records, and shifted the burden of proof.

Even though the Mississippi appellate court found that a proper instruction as to the missing records had not been presented, it held that the trial court erred in failing to place the burden of proof on the hospital to show that the chart was not lost or destroyed by the hospital, and in failing to give an instruction on the spoliation issue; it was further held that such failures were not harmless error.

We are not bound by Mississippi law; however, the principles pronounced in *DeLaughter* are sound and are subject to adoption by this State. It is no secret that problems are being encountered by trial judges with missing and altered documents in our present scheme of extensive pre-trial discovery. We are further mindful of the problems of sanctions with regard to missing docu-

ments. Proper instructions on the trial of the case may have the effect of more diligent and complete search for missing essential documents.

In the instant case a substantially correct instruction was submitted; it was error not to submit an instruction to the jury on the matter of the missing records and that such error was calculated to, and did cause, the rendition of an improper verdict.

Attention is turned to the problem confronting the trial judge with regard to this matter. There was no predicate precisely on point for his guidance. Upon a new trial of this cause, and in the event of like testimony then being presented, an instruction similar to the one stated below would be appropriate:

> You are instructed that if documents which are pertinent to the issues in this cause and which were in the exclusive possession and control of a party and which cannot be produced, and their disappearance has not been satisfactorily explained, then you will consider that such documents contained information adverse to the position taken by the party who was in possession.

Appellants' point of error should be sustained, and the cause remanded for a new trial.