COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-214-CV

NICOLE MARIE CONDITT APPELLANT

V.

OLGA PATRICIA MORATO APPELLEE

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

We grant Appellant Nicole Marie Conditt’s motion for leave to file an amended motion for rehearing and motion for leave to exceed the page limit.  We overrule Conditt’s amended motion for rehearing, withdraw our June 21, 2007, opinion and judgment, and substitute the following.

Conditt appeals from a jury verdict awarding damages to Appellee Olga Patricia Morato.  In two issues on appeal, Conditt argues that the trial court abused its discretion by including a spoliation instruction in the jury charge and that the evidence was legally and factually insufficient to support the jury’s award for Morato’s future medical expenses.  Because we hold that the trial court’s submission of the spoliation instruction was not an abuse of discretion and the evidence was legally and factually sufficient to support the jury’s award of future medical expenses, we affirm.

I.  Facts
 
and Procedural History

On March 6, 2004, Conditt and Morato were involved in an automobile accident.  In June 2004, Morato sued Conditt on negligence grounds claiming injuries resulting from the accident.  At trial, Conditt stipulated fault, making damages the only issue for the jury.

Morato served Conditt with a pretrial request for production asking her to produce all photographs pertaining to the lawsuit.  Conditt responded that she did not have any photographs in her possession, custody, or control responsive to the request, but that she would supplement her response should such photographs be obtained.  Conditt subsequently testified in a deposition that her insurance company had taken photographs of her vehicle.  Morato filed a motion to compel production of the photographs.  Conditt’s response to the motion included photostatic copies of the photographs and affidavits of a litigation adjuster and a claims manager for Conditt’s insurance company stating that the photographs produced were the only photographs depicting Conditt’s vehicle that they had in their possession.

The trial court granted the motion after a hearing, stating in the hearing that Conditt should produce in color any additional photographs of Conditt’s vehicle, and that the four that had already been given to Morato should be produced in color, or digitally, or in some form other than the photostatic copies provided.  The written order required Conditt to provide color photographs, if any, of Conditt’s and Morato’s vehicles.  Conditt did not produce any additional photographs.  Morato requested and received a spoliation instruction in the jury charge.

During trial, Morato introduced medical records showing that she had sought treatment first at Accident & Injury Chiropractic and then from Dr. Jacob Rosenstein, a neurosurgeon, incurring a total of $13,851.07 in medical expenses.  The jury awarded her as damages the full amount of her past medical expenses and $12,000.00 for future medical expenses.

After trial, Conditt filed a motion for judgment notwithstanding the verdict and a combined motion for new trial and remittitur, which the trial court denied.  She then timely filed this appeal.

II. Spoliation Instruction

In her first issue, Conditt argues that the trial court abused its discretion by including a spoliation instruction in the jury charge because (1) the pleadings and evidence do not support its inclusion, (2) Conditt did not fail to produce any photographs, (3) Conditt had no duty to preserve the photographs, and (4) the court had other, less prejudicial discovery sanctions available to remedy any perceived inequity in the lack of color photographs of Conditt’s vehicle.  Morato contends that Conditt failed to properly preserve error during the spoliation conference.  Because a failure to preserve error would be dispositive of Conditt’s first issue, we consider this argument first.

To preserve a complaint about the jury charge, the objecting party must timely and plainly make the trial court aware of the complaint and obtain a ruling.
(footnote: 2)  When Morato requested the spoliation instruction, Conditt objected to the trial court that there was no factual basis to support the instruction, that there was no evidence that there were other photographs in existence, and that Conditt and the insurance company had produced all the photographs that they had.  The trial court overruled the objections.

At the charge conference, Conditt renewed her objections to the spoliation instruction by reference to the arguments she had previously made to the trial court.  The trial court again overruled her objections.  Conditt did not make any new objections.  We hold that these objections plainly made the trial court aware of Conditt’s complaint that the evidence does not support the inclusion of the instruction as well as her complaint that there is no basis for the instruction because Conditt did not fail to produce the photographs in her possession, custody, and control.  We therefore hold that Conditt preserved these complaints for appeal.

But we also hold that Conditt did nothing to apprise the trial court of her desire for a less stringent sanction, should the court decide to impose a sanction.
(footnote: 3)  An objection that there is no evidence of spoliation does not make the trial court aware of a complaint that a spoliation instruction is an excessive sanction in the circumstances.  Conditt thus did not preserve this argument.
(footnote: 4)  Further, although Conditt suggests on appeal that a more appropriate sanction would have been to exclude the photographs of Morato’s car, Conditt asked for that evidence to be admitted.  A party cannot urge a trial court to take a particular course of action and then later argue that the court’s action was error.
(footnote: 5)
 Nor did Conditt’s objections plainly make the trial court aware of her complaint that the instruction was improper on the ground that she had no duty to preserve the photographs.  She has therefore failed to preserve this complaint.
(footnote: 6)
 Similarly, Conditt also did not preserve her complaint that because Morato never officially filed her motion for the spoilation instruction with the trial court clerk, the requested instruction had no support in the pleadings.  Conditt did not object to the instruction on this ground and therefore we do not consider this argument on appeal.
(footnote: 7)
 We now consider Conditt’s preserved arguments that Morato presented no evidence that color photographs of Conditt’s vehicle existed, that Conditt produced all of the photographs in her possession and thus she did not fail to produce evidence, and that she therefore did not need to explain to the trial court why she did not produce photographs in this case.

Jury instructions must be supported by the evidence.
(footnote: 8)  A trial court must submit “such instructions and definitions as shall be proper to enable the jury to render a verdict.”
(footnote: 9)  We review for abuse of discretion a trial court’s decision as to what instructions are necessary and proper, including the decision to submit a spoliation instruction.
(footnote: 10)  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable.
(footnote: 11)  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
(footnote: 12)  To determine whether Conditt’s arguments have merit, we examine the record for evidence supporting the submission of the spoliation instruction, considering evidence supporting the submission of the spoliation instruction if a reasonable factfinder could and ignoring evidence to the contrary unless a reasonable factfinder could not.
(footnote: 13)
 Texas has two general rules regarding when a presumption may arise that nonproduced evidence would be unfavorable to the nonproducing party.
(footnote: 14)  A presumption may arise when a party destroys evidence within its control.
(footnote: 15)  A presumption may also arise when a party fails to produce evidence or fails to explain its nonproduction.
(footnote: 16)  The presumption arises in the second instance as an inference that a jury may draw when one party has introduced evidence harmful to its opponent and the opposing party fails to rebut the harmful evidence with evidence within its control:
(footnote: 17)  “when the proof tends to establish a fact, and . . . it is within the power and the interest of the opposite party to disprove it, the silence of the opposing party not only strengthens the probative force of the affirmative proof but of itself [has] a certain probative force.”
(footnote: 18)  The trial court in this case found that, despite an order compelling Conditt to produce evidence, she failed to do so and did not explain its nonproduction. Conditt testified by deposition.  She stated that in the accident, the front of her vehicle went underneath Morato’s vehicle; when asked to clarify whether she meant that the front part of her vehicle hit the back of Morato’s vehicle, she answered “I guess.”  When asked to describe the damage resulting to her vehicle from the accident as either light, moderate, or heavy, she first stated, “I don’t know,” and then said it was “possibly moderate.”  She later testified that her vehicle was drivable after the accident and that she drove it home. Morato testified that as a result of the accident, the entire front of Conditt’s vehicle was damaged, stating that “the whole thing . . . [t]he front of the car . . . [t]he hood, everything was smashed in.”  In response to her attorney’s questions, she agreed that while Conditt produced clear, color photographs of Morato’s vehicle, the photostatic copies Conditt produced of her own vehicle were of poor quality and failed to show the extent of the damage.  Morato’s testimony supported her claim of damages and suggested to the jury that Conditt had deliberately misled them on the issue of damages. Conditt could have produced the original photographs, better copies of them, or some other evidence to rebut the suggestion that she deliberately produced photographs that did not accurately depict the damage, or she could have offered an explanation for what happened to the originals.
(footnote: 19)  She did not do so.

Conditt did not contradict at trial Morato’s assertion to the trial court that Conditt had a duty to preserve the originals of the photographs in question.  Yet Conditt’s attorney provided no explanation for why no one had possession of them or knew what had happened to them.  Conditt initially argued that there was no evidence that other photographs of her vehicle existed.  But in order for photostatic copies to be made, the original photographs had to have existed at some point.  The trial court found that Conditt had no explanation for what happened to those originals.

Nor did Conditt testify as to the substance of the photographs.
(footnote: 20)  Although she stated that the damage was “possibly moderate,” she did not specifically rebut Morato’s testimony.  Because of  Morato’s testimony on a matter to which the photographs had particular relevance and the lack of an explanation from Conditt for her failure to produce the photographs, a jury instruction was proper.
(footnote: 21)
 Additionally, Conditt failed to comply with the trial court’s order on Morato’s motion to compel evidence and failed to explain her noncompliance to the trial court’s satisfaction.  Conditt claimed to the trial court and now claims on appeal that she did not produce any photographs in response to the order because no other photographs were found in her or her insurance carrier’s possession, custody, or control.  But Conditt’s attorney gave no explanation for why he had clear, color photographs of Morato’s vehicle but neither he nor the insurance company had in its possession at least the originals of the four produced copies of Conditt’s vehicle.  A trial court has authority to sanction a party for failure to comply with a discovery order, and a spoliation instruction is one type of “sanction” that a trial court may use.
(footnote: 22)
 Conditt relies on 
Wal-Mart Stores, Inc. v. Middleton
(footnote: 23) for the proposition that she did not need to provide any explanation for the nonproduction of the photographs because she did not fail to produce any photographs.  We have already established that she did fail to produce photographs.  
Middleton
 is further distinguishable from this case because in 
Middleton
, a reasonable explanation was given for the absence of relevant photographs and testimony was given as to the photographs’ contents.

We hold that the trial court did not abuse its discretion by concluding that Conditt’s failure to produce evidence was sanctionable.  Because the evidence supports Morato’s assertions that Conditt offered no explanation for her failure to produce the photographs, we hold that the trial court did not abuse its discretion by submitting the spoliation instruction.  We overrule Conditt’s first issue.

III.  Sufficiency of the Evidence of Future Medical Expenses

In her second issue, Conditt argues that the evidence was legally and factually insufficient to support the jury’s award for Morato’s future medical expenses.  A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.
(footnote: 24)  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
(footnote: 25)
 An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.
(footnote: 26)  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.
(footnote: 27)
 In determining an award for future medical expenses, Texas follows the “reasonable probability” rule, which means that a plaintiff “must show that there is a reasonable probability that such medical expenses will be incurred in the future.”
(footnote: 28)  While the preferred practice is for a plaintiff to establish future medical expenses through expert testimony, no rule requires such evidence.
(footnote: 29) A jury’s award for future medical expenses may be based “upon the nature of the plaintiff's injuries, medical care rendered before trial, and the plaintiff's condition at the time of trial.”
(footnote: 30)  “An award of future medical expenses lies largely within the jury’s discretion,” and because “the future costs of products and services are, by their very nature, uncertain, appellate courts are particularly reluctant to disturb a jury’s award of these damages.”
(footnote: 31)
 Morato did not introduce any direct evidence of the reasonably probable amount of future medical expenses, but she did introduce evidence of the injuries she suffered as a result of the accident, the treatment she had received prior to trial and the costs of that treatment, her condition at the time of trial, and the probability that she will need more medical treatment in the future.  Morato’s medical records, introduced at trial and published to the jury without objection, state that she had a “loss of normal cervical lordotic curve” and suffered from a 2 mm right paramedian C4-5 disc protrusion.  The records also note that at the time of the examination she was “very tender in the suboccipital areas.”

Morato testified that despite treatment, as of the time of trial she still had not fully recovered.  Although her medical treatment so far had helped her a little, she still got numbness in her arms and her neck, and some nights she woke up every two hours with the numbness.  After the accident she began to suffer from severe headaches, and she testified that even after treatment, she still got headaches.  She testified to having a headache during trial that, on a scale of 1 to 10 (with ten the worst), she rated a 9.  She also testified (and demonstrated for the jury) that she could not turn her neck all the way to the left or the right without pain.

In an attempt to establish the amount of past medical expenses and the reasonable probable amount of future medical expenses, Morato pointed to her medical records from her treating physician Dr. Rosenstein, showing that in treatment of her injuries she had received cervical spine x-rays, a cervical spine CT, a thoracic spine CT, and cervical epidural steroid injections.  The records also reflect that she was given various prescription medications for pain.  Dr. Rosenstein noted in Morato’s records that, even after the treatment she had thus far received, she had “multiple trigger points with a moderate amount of spasm in the upper trapezial area and posterial cervical area,” and she would require additional injections–specifically bilateral occipital nerve blocks and trapezial trigger points injections.  Dr. Rosenstein noted in the records that if these injections did not improve her condition, she “may require a cervical myelogram.”

On this issue, Conditt’s only evidence consisted of an affidavit from Robert Honigsfeld, D.C., a licensed chiropractor.  The affidavit focuses on the reasonableness and necessity of the treatment Morato received at Accident & Injury and the associated diagnostic services she received while being treated there.  The only reference to future medical expenses comes in the last paragraph of the affidavit, which states that in Honigsfeld’s opinion, “the records do not support that this claimant incurred any type of functional impairment as a result of the [traffic accident] and consequently any claim for future medical expenses is unwarranted.”  But the only records referenced in the affidavit, and therefore the only records to which that paragraph could refer, are those of Accident and Injury.  Thus Conditt produced no evidence disputing the reasonableness or probable necessity of either past medical expenses incurred or future medical expenses to be incurred in the course of Morato’s treatment by Dr. Rosenstein.

The evidence presented by Morato at trial showed a reasonable probability that Morato will require future medical procedures “of a type at least as involved and expensive as that which [she] had already undergone and about which evidence was presented at trial.”
(footnote: 32)  Although the amount awarded to Morato for future medical expenses is more than she had so far paid for treatment by Dr. Rosenstein, considering the evidence presented as to her injuries, her ongoing need for medical treatment, and the cost of her past treatment, “as well as the truism of life that the cost of medical treatment continues to rise[,]”
(footnote: 33) the evidence offered by Morato on this issue is more than a mere scintilla, and thus we hold that the evidence is legally sufficient to support the jury’s verdict.  We also hold that the evidence presented by Morato on this issue is not so weak or the evidence to the contrary so overwhelming that the answer should be set aside, and thus the evidence is also factually sufficient to support the jury’s verdict.  We overrule Conditt’s second issue. 
 

IV.  Conclusion

Having overruled both of Conditt’s issues, we affirm the trial court’s judgment.

LEE ANN DAUPHINOT

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  September 13, 2007

FOOTNOTES
1:
See 
Tex. R. App. P.
 47.4.

2:
State Dep’t of Highways & Pub. Transp. v. Payne
, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh’g).

3:
Conditt’s attorney did state that “perhaps there is” an inference of spoliation, and “[that’s] for the Court to decide.”

4:
See
 
Tex. R. App. P.
 33.1; 
Bushell v. Dean
, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh’g)
; 
see also Centurion Planning Corp.
,
 Inc. v. Seabrook Venture II
, 176 S.W.3d 498, 508 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (“A party is required to object 
before
 the trial court submits an erroneous question, instruction or definition.”) (emphasis added).

5:
Neasbitt v. Warren
, 22 S.W.3d 107, 112 (Tex. App.—Fort Worth 2000, no pet.).

6:
See Payne
, 838 S.W.2d at 241; 
see also PGP Gas Prods.
,
 Inc. v. Fariss
, 620 S.W.2d 559, 560 (Tex. 1981) (holding that complaint that there was no evidence of compliance with condemnation procedural requirement was not preserved because the objections made were too general to apprise the trial court of the specific complaint);
 Tubb v. Bartlett
, 862 S.W.2d 740, 748 (Tex. App.—El Paso 1993, writ denied) (stating that “[f]ailure to object to jury questions for form, substance, or omission, lack of definition or explanatory instruction, or on account of any defect, omission or fault in pleading before the charge is read to the jury waives any complaint on appeal”)
.

7:
Spencer v. Eagle Star Ins. Co. of Am.
, 876 S.W.2d 154, 157 (Tex. 1994) (quoting 
Tex. R. Civ. P. 274
, which states that a party complaining about a charge must object to the trial court and that “[a]ny complaint as to a[n] . . . instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections”); 
see also In re C.O.S.
, 988 S.W.2d 760, 765 (Tex. 1999) (stating that a litigant must lay a predicate in the trial court before pursuing a complaint on appeal because “one should not be permitted to waive, consent to, or neglect to complain about an error at trial and then surprise his [or her] opponent on appeal by stating [a] complaint for the first time”) (quoting 
Pirtle v. Gregory
, 629 S.W.2d 919, 920 (Tex.1982));
 Murray v. O & A Express
,
 Inc.
, 630 S.W.2d 633, 637 (Tex. 1982) (holding that, having failed to except to the lack of pleadings at any point during trial, the defendant waived any error in the plaintiff’s pleadings).

8:
Tex. R. Civ. P. 278 
(stating that 
“[
t]he court shall submit the . . . instructions . . . which are raised by the written pleadings and the evidence”).

9:
Tex. R. Civ. P.
 277; 
see also
 
Fethkenher v. Kroger Co.
, 139 S.W.3d 24, 30-31 (Tex. App.—Fort Worth 2004, no pet.).

10:
See Fethkenher
, 139 S.W.3d at 30-31; 
Offshore Pipelines
,
 Inc. v. Schooley
, 984 S.W.2d 654, 666 (Tex. App.—Houston [1st Dist.] 1998, no pet.).

11:
Downer v. Aquamarine Operators
,
 Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).

12:
Id.

13:
See Elbaor v. Smith
, 845 S.W.2d 240, 243 (Tex. 1992) (reviewing for legal sufficiency the evidence supporting the submission of an issue to the jury); 
see also City of Keller v. Wilson
, 168 S.W.3d 802, 827 (Tex. 2005) (setting out the scope of review for legal sufficiency).

14:
Brewer v. Dowling
, 862 S.W.2d 156, 159 (Tex. App.—Fort Worth 1993, writ denied).

15:
Wal-Mart Stores
,
 Inc. v. Johnson
, 106 S.W.3d 718, 721-22 (Tex. 2003); 
Brewer
, 862 S.W.2d at 159.

16:
Wal-Mart Stores
, 106 S.W.3d at 721-22; 
Brewer
, 862 S.W.2d at 159.

17:
Brewer
, 862 S.W.2d at 159; 
see also
 
Flournoy v. Wilz
, 201 S.W.3d 833, 837 (Tex. App.—Waco 2006)
 
(holding that a jury may draw adverse inferences against parties who refuse to testify in response to probative evidence offered against them), 
rev’d on other grounds by 
228 S.W.3d 674 (Tex. 2007).

18:
Dunn v. Johnson
, 274 S.W.2d 108, 110 (Tex. Civ. App.—Waco 1954, no writ)
; 
see also Lindsey v. State
, 194 S.W.2d 413, 418 (Tex. Civ. App.—Eastland 1946, writ ref’d n.r.e.) (stating that “[u]sually the force of evidence, though slight, is greatly increased by the failure of the opposite party to rebut it, where it is obvious that the means are readily accessible to him”).

19:
See Brewer
, 862 S.W.2d at 159.

20:
See id
.

21:
Wal-Mart Stores
, 106 S.W.3d at 721-22.

22:
Cire v. Cummings
, 134 S.W.3d 835, 839, 843 (Tex. 2004).

23:
982 S.W.2d 468 (Tex. App.—San Antonio 1998, pet. denied).

24:
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998), 
cert. denied
, 526 U.S. 1040 (1999); Robert W. Calvert, 
"No Evidence" and "Insufficient Evidence" Points of Error
, 38 
Tex. L. Rev. 
361, 362-63 (1960). 

25:
City of Keller
, 168 S.W.3d at 827.

26:
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).

27:
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).

28:
Antonov v. Walters
, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied); 
see also Pilgrim’s Pride Corp. v. Cernat
, 205 S.W.3d 110, 121 (Tex. App.—Texarkana 2006, pet. denied) (holding that a plaintiff must show the reasonable costs of future medical care and that, because a plaintiff cannot provide precise evidence about the amount of future medical bills, such costs may be based on the costs of the medical care rendered before trial).

29:
Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush
, 122 S.W.3d 835, 863 (Tex. App.—Fort Worth 2003, pet. denied); 
see also Thate v. Tex. & Pac. Ry. Co.
, 595 S.W.2d 591, 601 (Tex. Civ. App.—Dallas 1980, writ dism’d) (holding that 
“the only requirement to support a verdict on this issue is that there be evidence in the record of the reasonable value of past medical treatment and to establish the probable necessity of future medical treatment”).

30:
Antonov
, 168 S.W.3d at 908;
 Columbia Med. Ctr.
, 122 S.W.3d at 863.

31:
Antonov
, 168 S.W.3d at 908; 
see also Six Flags Over Tex.
,
 Inc. v. Parker
, 759 S.W.2d 758, 761 (Tex. App.—Fort Worth 1988, no writ) (holding that plaintiff’s evidence of future medical expenses was sufficient when plaintiff testified that she had continued pain in her knees and her treating physician testified that it was possible that she would require future correction and repair to her hip and knee replacements).

32:
Keller Indus.
,
 Inc. v. Reeves
, 656 S.W.2d 221, 227 (Tex. App.—Austin 1983, writ ref’d n.r.e.).

33:
Rauch v. Patterson
, 832 S.W.2d 57, 62 (Tex. App.—Houston [14th Dist.] 1992, writ denied).