COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-214-CV

 

 

NICOLE MARIE CONDITT                                                      APPELLANT

 

                                                   V.

 

OLGA PATRICIA MORATO                                                       APPELLEE

 

                                              ------------

 

         FROM COUNTY
COURT AT LAW NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

We grant Appellant Nicole Marie Conditt=s motion
for leave to file an amended motion for rehearing and motion for leave to
exceed the page limit.  We overrule
Conditt=s
amended motion for rehearing, withdraw our June 21, 2007, opinion and judgment,
and substitute the following.

 








Conditt appeals from a jury verdict awarding
damages to Appellee Olga Patricia Morato. 
In two issues on appeal, Conditt argues that the trial court abused its
discretion by including a spoliation instruction in the jury charge and that
the evidence was legally and factually insufficient to support the jury=s award
for Morato=s future medical expenses.  Because we hold that the trial court=s
submission of the spoliation instruction was not an abuse of discretion and the
evidence was legally and factually sufficient to support the jury=s award
of future medical expenses, we affirm.

I. 
Facts and
Procedural History

On March 6, 2004, Conditt and Morato were
involved in an automobile accident.  In
June 2004, Morato sued Conditt on negligence grounds claiming injuries
resulting from the accident.  At trial,
Conditt stipulated fault, making damages the only issue for the jury.








Morato served Conditt with a pretrial request for
production asking her to produce all photographs pertaining to the
lawsuit.  Conditt responded that she did
not have any photographs in her possession, custody, or control responsive to
the request, but that she would supplement her response should such photographs
be obtained.  Conditt subsequently
testified in a deposition that her insurance company had taken photographs of
her vehicle.  Morato filed a motion to
compel production of the photographs. 
Conditt=s response to the motion
included photostatic copies of the photographs and affidavits of a litigation
adjuster and a claims manager for Conditt=s
insurance company stating that the photographs produced were the only
photographs depicting Conditt=s
vehicle that they had in their possession.

The trial court granted the motion after a
hearing, stating in the hearing that Conditt should produce in color any
additional photographs of Conditt=s
vehicle, and that the four that had already been given to Morato should be
produced in color, or digitally, or in some form other than the photostatic
copies provided.  The written order
required Conditt to provide color photographs, if any, of Conditt=s and
Morato=s
vehicles.  Conditt did not produce any
additional photographs.  Morato requested
and received a spoliation instruction in the jury charge.

During trial, Morato introduced medical records
showing that she had sought treatment first at Accident & Injury
Chiropractic and then from Dr. Jacob Rosenstein, a neurosurgeon, incurring a
total of $13,851.07 in medical expenses. 
The jury awarded her as damages the full amount of her past medical
expenses and $12,000.00 for future medical expenses.

After trial, Conditt filed a motion for judgment
notwithstanding the verdict and a combined motion for new trial and remittitur,
which the trial court denied.  She then
timely filed this appeal.








II. Spoliation Instruction

In her first issue, Conditt argues that the trial
court abused its discretion by including a spoliation instruction in the jury
charge because (1) the pleadings and evidence do not support its inclusion, (2)
Conditt did not fail to produce any photographs, (3) Conditt had no duty to
preserve the photographs, and (4) the court had other, less prejudicial
discovery sanctions available to remedy any perceived inequity in the lack of
color photographs of Conditt=s
vehicle.  Morato contends that Conditt
failed to properly preserve error during the spoliation conference.  Because a failure to preserve error would be
dispositive of Conditt=s first issue, we consider this
argument first.

To preserve a complaint about the jury charge,
the objecting party must timely and plainly make the trial court aware of the
complaint and obtain a ruling.[2]  When Morato requested the spoliation
instruction, Conditt objected to the trial court that there was no factual
basis to support the instruction, that there was no evidence that there were
other photographs in existence, and that Conditt and the insurance company had
produced all the photographs that they had. 
The trial court overruled the objections.








At the charge conference, Conditt renewed her
objections to the spoliation instruction by reference to the arguments she had
previously made to the trial court.  The
trial court again overruled her objections. 
Conditt did not make any new objections. 
We hold that these objections plainly made the trial court aware of
Conditt=s
complaint that the evidence does not support the inclusion of the instruction
as well as her complaint that there is no basis for the instruction because
Conditt did not fail to produce the photographs in her possession, custody, and
control.  We therefore hold that Conditt
preserved these complaints for appeal.








But we also hold that Conditt did nothing to
apprise the trial court of her desire for a less stringent sanction, should the
court decide to impose a sanction.[3]  An objection that there is no evidence of
spoliation does not make the trial court aware of a complaint that a spoliation
instruction is an excessive sanction in the circumstances.  Conditt thus did not preserve this argument.[4]  Further, although Conditt suggests on appeal
that a more appropriate sanction would have been to exclude the photographs of
Morato=s car,
Conditt asked for that evidence to be admitted. 
A party cannot urge a trial court to take a particular course of action
and then later argue that the court=s action
was error.[5]

Nor did Conditt=s
objections plainly make the trial court aware of her complaint that the
instruction was improper on the ground that she had no duty to preserve the
photographs.  She has therefore failed to
preserve this complaint.[6]








Similarly, Conditt also did not preserve her
complaint that because Morato never officially filed her motion for the
spoilation instruction with the trial court clerk, the requested instruction
had no support in the pleadings.  Conditt
did not object to the instruction on this ground and therefore we do not
consider this argument on appeal.[7]

We now consider Conditt=s
preserved arguments that Morato presented no evidence that color photographs of
Conditt=s
vehicle existed, that Conditt produced all of the photographs in her possession
and thus she did not fail to produce evidence, and that she therefore did not
need to explain to the trial court why she did not produce photographs in this
case.








Jury instructions must be supported by the
evidence.[8]  A trial court must submit Asuch
instructions and definitions as shall be proper to enable the jury to render a
verdict.@[9]  We review for abuse of discretion a trial
court=s
decision as to what instructions are necessary and proper, including the
decision to submit a spoliation instruction.[10]  To determine whether a trial court abused its
discretion, we must decide whether the trial court acted without reference to
any guiding rules or principles; in other words, we must decide whether the act
was arbitrary or unreasonable.[11]  Merely because a trial court may decide a
matter within its discretion in a different manner than an appellate court would
in a similar circumstance does not demonstrate that an abuse of discretion has
occurred.[12]  To determine whether Conditt=s
arguments have merit, we examine the record for evidence supporting the
submission of the spoliation instruction, considering evidence supporting the
submission of the spoliation instruction if a reasonable factfinder could and
ignoring evidence to the contrary unless a reasonable factfinder could not.[13]


















Texas has two general rules regarding when a
presumption may arise that nonproduced evidence would be unfavorable to the
nonproducing party.[14]  A presumption may arise when a party destroys
evidence within its control.[15]  A presumption may also arise when a party fails
to produce evidence or fails to explain its nonproduction.[16]  The presumption arises in the second instance
as an inference that a jury may draw when one party has introduced evidence harmful
to its opponent and the opposing party fails to rebut the harmful evidence with
evidence within its control:[17]  Awhen the
proof tends to establish a fact, and . . . it is within the power and the
interest of the opposite party to disprove it, the silence of the opposing
party not only strengthens the probative force of the affirmative proof but of
itself [has] a certain probative force.@[18]  The trial court in this case found that,
despite an order compelling Conditt to produce evidence, she failed to do so
and did not explain its nonproduction.       Conditt
testified by deposition.  She stated that
in the accident, the front of her vehicle went underneath Morato=s
vehicle; when asked to clarify whether she meant that the front part of her
vehicle hit the back of Morato=s
vehicle, she answered AI guess.@  When asked to describe the damage resulting
to her vehicle from the accident as either light, moderate, or heavy, she first
stated, AI don=t know,@ and
then said it was Apossibly moderate.@  She later testified that her vehicle was
drivable after the accident and that she drove it home.  Morato testified that as a result of the accident, the entire front
of Conditt=s vehicle was damaged, stating
that Athe
whole thing . . . [t]he front of the car . . . [t]he hood, everything was
smashed in.@ 
In response to her attorney=s
questions, she agreed that while Conditt produced clear, color photographs of
Morato=s
vehicle, the photostatic copies Conditt produced of her own vehicle were of
poor quality and failed to show the extent of the damage.  Morato=s
testimony supported her claim of damages and suggested to the jury that Conditt
had deliberately misled them on the issue of damages. Conditt could have
produced the original photographs, better copies of them, or some other
evidence to rebut the suggestion that she deliberately produced photographs
that did not accurately depict the damage, or she could have offered an
explanation for what happened to the originals.[19]  She did not do so.

Conditt did not contradict at trial Morato=s
assertion to the trial court that Conditt had a duty to preserve the originals
of the photographs in question.  Yet
Conditt=s
attorney provided no explanation for why no one had possession of them or knew
what had happened to them.  Conditt
initially argued that there was no evidence that other photographs of her vehicle
existed.  But in order for photostatic
copies to be made, the original photographs had to have existed at some
point.  The trial court found that
Conditt had no explanation for what happened to those originals.

Nor did Conditt testify as to the substance of
the photographs.[20]  Although she stated that the damage was Apossibly
moderate,@ she did not specifically rebut
Morato=s testimony.  Because of 
Morato=s testimony on a matter to which
the photographs had particular relevance and the lack of an explanation from
Conditt for her failure to produce the photographs, a jury instruction was
proper.[21]








Additionally, Conditt failed to comply with the
trial court=s order on Morato=s motion
to compel evidence and failed to explain her noncompliance to the trial court=s
satisfaction.  Conditt claimed to the
trial court and now claims on appeal that she did not produce any photographs
in response to the order because no other photographs were found in her or her
insurance carrier=s possession, custody, or
control.  But Conditt=s
attorney gave no explanation for why he had clear, color photographs of Morato=s
vehicle but neither he nor the insurance company had in its possession at least
the originals of the four produced copies of Conditt=s
vehicle.  A trial court has authority to
sanction a party for failure to comply with a discovery order, and a spoliation
instruction is one type of Asanction@ that a
trial court may use.[22]








Conditt relies on Wal-Mart Stores, Inc. v.
Middleton[23]
for the proposition that she did not need to provide any explanation for the
nonproduction of the photographs because she did not fail to produce any
photographs.  We have already established
that she did fail to produce photographs. 
Middleton is further distinguishable from this case because in Middleton,
a reasonable explanation was given for the absence of relevant photographs and
testimony was given as to the photographs=
contents.

We hold that the trial court did not abuse its
discretion by concluding that Conditt=s
failure to produce evidence was sanctionable. 
Because the evidence supports Morato=s
assertions that Conditt offered no explanation for her failure to produce the
photographs, we hold that the trial court did not abuse its discretion by
submitting the spoliation instruction. 
We overrule Conditt=s first
issue.

III.  Sufficiency of the Evidence
of Future Medical Expenses








In her second issue, Conditt argues that the
evidence was legally and factually insufficient to support the jury=s award
for Morato=s future medical expenses.  A legal sufficiency challenge may only be
sustained when:  (1) the record discloses
a complete absence of evidence of a vital fact; (2) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to
prove a vital fact; (3) the evidence offered to prove a vital fact is no more
than a mere scintilla; or (4) the evidence establishes conclusively the
opposite of a vital fact.[24]  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.[25]

An assertion that the evidence is factually
insufficient to support a fact finding means that the evidence supporting the
finding is so weak or the evidence to the contrary is so overwhelming that the
answer should be set aside and a new trial ordered.[26]  We are required to consider all of the
evidence in the case in making this determination, not just the evidence that
supports the finding.[27]








In determining an award for future medical
expenses, Texas follows the Areasonable
probability@ rule, which means that a
plaintiff Amust show that there is a
reasonable probability that such medical expenses will be incurred in the
future.@[28]  While the preferred practice is for a
plaintiff to establish future medical expenses through expert testimony, no
rule requires such evidence.[29]
A jury=s award
for future medical expenses may be based Aupon the
nature of the plaintiff's injuries, medical care rendered before trial, and the
plaintiff's condition at the time of trial.@[30]  AAn award
of future medical expenses lies largely within the jury=s
discretion,@ and because Athe
future costs of products and services are, by their very nature, uncertain,
appellate courts are particularly reluctant to disturb a jury=s award
of these damages.@[31]








Morato did not introduce any direct evidence of
the reasonably probable amount of future medical expenses, but she did
introduce evidence of the injuries she suffered as a result of the accident,
the treatment she had received prior to trial and the costs of that treatment,
her condition at the time of trial, and the probability that she will need more
medical treatment in the future.  Morato=s
medical records, introduced at trial and published to the jury without
objection, state that she had a Aloss of
normal cervical lordotic curve@ and
suffered from a 2 mm right paramedian C4-5 disc protrusion.  The records also note that at the time of the
examination she was Avery tender in the suboccipital
areas.@

Morato testified that despite treatment, as of
the time of trial she still had not fully recovered.  Although her medical treatment so far had
helped her a little, she still got numbness in her arms and her neck, and some
nights she woke up every two hours with the numbness.  After the accident she began to suffer from
severe headaches, and she testified that even after treatment, she still got
headaches.  She testified to having a
headache during trial that, on a scale of 1 to 10 (with ten the worst), she
rated a 9.  She also testified (and
demonstrated for the jury) that she could not turn her neck all the way to the
left or the right without pain.








In an attempt to establish the amount of past
medical expenses and the reasonable probable amount of future medical expenses,
Morato pointed to her medical records from her treating physician Dr.
Rosenstein, showing that in treatment of her injuries she had received cervical
spine x-rays, a cervical spine CT, a thoracic spine CT, and cervical epidural
steroid injections.  The records also
reflect that she was given various prescription medications for pain.  Dr. Rosenstein noted in Morato=s
records that, even after the treatment she had thus far received, she had Amultiple
trigger points with a moderate amount of spasm in the upper trapezial area and
posterial cervical area,@ and she would require
additional injectionsBspecifically bilateral occipital
nerve blocks and trapezial trigger points injections.  Dr. Rosenstein noted in the records that if
these injections did not improve her condition, she Amay
require a cervical myelogram.@








On this issue, Conditt=s only
evidence consisted of an affidavit from Robert Honigsfeld, D.C., a licensed
chiropractor.  The affidavit focuses on
the reasonableness and necessity of the treatment Morato received at Accident
& Injury and the associated diagnostic services she received while being
treated there.  The only reference to
future medical expenses comes in the last paragraph of the affidavit, which
states that in Honigsfeld=s opinion, Athe
records do not support that this claimant incurred any type of functional
impairment as a result of the [traffic accident] and consequently any claim for
future medical expenses is unwarranted.@  But the only records referenced in the
affidavit, and therefore the only records to which that paragraph could refer,
are those of Accident and Injury.  Thus
Conditt produced no evidence disputing the reasonableness or probable necessity
of either past medical expenses incurred or future medical expenses to be
incurred in the course of Morato=s
treatment by Dr. Rosenstein.








The evidence presented by Morato at trial showed
a reasonable probability that Morato will require future medical procedures Aof a
type at least as involved and expensive as that which [she] had already
undergone and about which evidence was presented at trial.@[32]  Although the amount awarded to Morato for
future medical expenses is more than she had so far paid for treatment by Dr.
Rosenstein, considering the evidence presented as to her injuries, her ongoing
need for medical treatment, and the cost of her past treatment, Aas well
as the truism of life that the cost of medical treatment continues to rise[,]@[33] the
evidence offered by Morato on this issue is more than a mere scintilla, and
thus we hold that the evidence is legally sufficient to support the jury=s
verdict.  We also hold that the evidence
presented by Morato on this issue is not so weak or the evidence to the
contrary so overwhelming that the answer should be set aside, and thus the
evidence is also factually sufficient to support the jury=s
verdict.  We overrule Conditt=s second
issue.      

 

IV. 
Conclusion

Having overruled both of Conditt=s
issues, we affirm the trial court=s
judgment.

 

LEE
ANN DAUPHINOT

JUSTICE

PANEL A:   CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  September 13, 2007











[1]See Tex.
R. App. P.
47.4.





[2]State Dep=t of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh=g).





[3]Conditt=s attorney did state that
Aperhaps there is@ an inference of
spoliation, and A[that=s] for the Court to decide.@





[4]See Tex. R. App. P. 33.1; Bushell v. Dean, 803 S.W.2d 711,
712 (Tex. 1991) (op. on reh=g); see also Centurion Planning Corp.,
Inc. v. Seabrook Venture II, 176 S.W.3d 498, 508 (Tex. App.CHouston [1st Dist.] 2004,
no pet.) (AA party is required to
object before the trial court submits an erroneous question, instruction
or definition.@) (emphasis added).





[5]Neasbitt v. Warren, 22 S.W.3d 107, 112
(Tex. App.CFort Worth 2000, no
pet.).





[6]See Payne, 838 S.W.2d at 241; see
also PGP Gas Prods., Inc. v. Fariss, 620 S.W.2d 559, 560 (Tex. 1981)
(holding that complaint that there was no evidence of compliance with
condemnation procedural requirement was not preserved because the objections
made were too general to apprise the trial court of the specific complaint);
Tubb v. Bartlett, 862 S.W.2d 740, 748 (Tex. App.CEl Paso 1993, writ
denied) (stating that A[f]ailure to object to
jury questions for form, substance, or omission, lack of definition or
explanatory instruction, or on account of any defect, omission or fault in
pleading before the charge is read to the jury waives any complaint on appeal@).





[7]Spencer v. Eagle Star
Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994) (quoting Tex. R. Civ. P. 274, which states that a party complaining
about a charge must object to the trial court and that A[a]ny complaint as to
a[n] . . . instruction, on account of any defect, omission, or fault in
pleading, is waived unless specifically included in the objections@); see also In re
C.O.S., 988 S.W.2d 760, 765 (Tex. 1999) (stating that a litigant must lay a
predicate in the trial court before pursuing a complaint on appeal because Aone should not be
permitted to waive, consent to, or neglect to complain about an error at trial
and then surprise his [or her] opponent on appeal by stating [a] complaint for
the first time@) (quoting Pirtle v.
Gregory, 629 S.W.2d 919, 920 (Tex.1982)); Murray v. O & A Express,
Inc., 630 S.W.2d 633, 637 (Tex. 1982) (holding that, having failed to
except to the lack of pleadings at any point during trial, the defendant waived
any error in the plaintiff=s pleadings).





[8]Tex.
R. Civ. P. 278 (stating
that A[t]he court shall submit
the . . . instructions . . . which are raised by the written pleadings and the
evidence@).





[9]Tex.
R. Civ. P. 277;
see also Fethkenher v. Kroger Co., 139 S.W.3d 24, 30‑31
(Tex. App.CFort Worth 2004, no
pet.).





[10]See Fethkenher, 139 S.W.3d at 30‑31;
Offshore Pipelines, Inc. v. Schooley, 984 S.W.2d 654, 666 (Tex.
App.CHouston [1st Dist.] 1998,
no pet.).





[11]Downer v. Aquamarine
Operators,
Inc., 701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S.
1159 (1986).





[12]Id.





[13]See Elbaor v. Smith, 845 S.W.2d 240, 243
(Tex. 1992) (reviewing for legal sufficiency the evidence supporting the
submission of an issue to the jury); see also City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005) (setting out the scope of review for legal
sufficiency).





[14]Brewer v. Dowling, 862 S.W.2d 156, 159
(Tex. App.CFort Worth 1993, writ
denied).





[15]Wal-Mart Stores, Inc. v. Johnson,
106 S.W.3d 718, 721-22 (Tex. 2003); Brewer, 862 S.W.2d at 159.





[16]Wal-Mart Stores, 106 S.W.3d at 721-22; Brewer,
862 S.W.2d at 159.





[17]Brewer, 862 S.W.2d at 159; see
also Flournoy v. Wilz, 201 S.W.3d 833, 837 (Tex. App.CWaco 2006) (holding
that a jury may draw adverse inferences against parties who refuse to testify
in response to probative evidence offered against them), rev=d on other grounds by 228 S.W.3d 674 (Tex.
2007).





[18]Dunn v. Johnson, 274 S.W.2d 108, 110
(Tex. Civ. App.CWaco 1954, no writ); see
also Lindsey v. State, 194 S.W.2d 413, 418 (Tex. Civ. App.CEastland 1946, writ ref=d n.r.e.) (stating that A[u]sually the force of
evidence, though slight, is greatly increased by the failure of the opposite
party to rebut it, where it is obvious that the means are readily accessible to
him@).





[19]See Brewer, 862 S.W.2d at 159.





[20]See id.





[21]Wal-Mart Stores, 106 S.W.3d at 721-22.





[22]Cire v. Cummings, 134 S.W.3d 835, 839,
843 (Tex. 2004).





[23]982 S.W.2d 468 (Tex. App.CSan Antonio 1998, pet.
denied).





[24]Uniroyal Goodrich Tire
Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040
(1999); Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 Tex.
L. Rev. 361, 362‑63 (1960). 





[25]City of Keller, 168 S.W.3d at 827.





[26]Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).





[27]Mar. Overseas Corp. v.
Ellis,
971 S.W.2d 402, 406-07 (Tex.), cert. denied, 525 U.S. 1017 (1998).





[28]Antonov v. Walters, 168 S.W.3d 901, 908
(Tex. App.CFort Worth 2005, pet.
denied); see also Pilgrim=s Pride Corp. v. Cernat, 205 S.W.3d 110, 121
(Tex. App.CTexarkana 2006, pet.
denied) (holding that a plaintiff must show the reasonable costs of future
medical care and that, because a plaintiff cannot provide precise evidence
about the amount of future medical bills, such costs may be based on the costs
of the medical care rendered before trial).





[29]Columbia Med. Ctr. of Las
Colinas v. Bush ex rel. Bush, 122 S.W.3d 835, 863 (Tex. App.CFort Worth 2003, pet.
denied); see also Thate v. Tex. & Pac. Ry. Co., 595 S.W.2d 591, 601
(Tex. Civ. App.CDallas 1980, writ dism=d) (holding that Athe only requirement to
support a verdict on this issue is that there be evidence in the record of the
reasonable value of past medical treatment and to establish the probable
necessity of future medical treatment@).





[30]Antonov, 168 S.W.3d at 908;
Columbia Med. Ctr., 122 S.W.3d at 863.





[31]Antonov, 168 S.W.3d at 908; see
also Six Flags Over Tex., Inc. v. Parker, 759 S.W.2d 758, 761 (Tex.
App.CFort Worth 1988, no writ)
(holding that plaintiff=s evidence of future
medical expenses was sufficient when plaintiff testified that she had continued
pain in her knees and her treating physician testified that it was possible
that she would require future correction and repair to her hip and knee replacements).





[32]Keller Indus., Inc. v. Reeves,
656 S.W.2d 221, 227 (Tex. App.CAustin 1983, writ ref=d n.r.e.).





[33]Rauch v. Patterson, 832 S.W.2d 57, 62 (Tex.
App.CHouston [14th Dist.]
1992, writ denied).